# Peel *v.* The State.

## *Murder.*

[DECIDED APRIL 13, 1905, 39 So. REP. 251.]

1   *Supernumerary Judge; Authority and Duties.*—Under sections two and three of the Act of February 20th, 1899, creating the office of supernumerary judge, it seems that regardless of the cause, if the circuit judge cannot hold regular term of the court the supernumerary judge when directed by the governor, may do so.

2.   *Same.*—In the absence of anything to the contrary the supreme court will presume that the circuit judge had notified the governor that he could not attend the regular term of the court as provided by section three of the act of February 20, 1899, and that it was upon such notification that the governor directed the supernumerary judge to hold the court.

3.   *Same.*—Where the regular term of the court was organized by the supernumerary judge it was not necessary that the minute entry showing the organization of the court should set forth any reason why the circuit judge was not present to organize the court.

4.   *Adjourned Term; Order for Summoning Jurors.*—Where the order made by the court at the regular term adjourning the court until a time named, made no provision for jurors to serve any portion of the first week of the adjourned term, such fact did not effect any right of a defendant or the validity of the *venire*, the defendant's case being set for trial during the second week, nor did it concern the defendant   .

whether the court during the first week was engaged in the trial of cases.

5. *Same; Summoning of Jurors; Validity of Order of the Court.*— Where the order for the holding of an adjourned term directed the circui¹ clerk to instruct the jury commissioners to draw the names of thirty qualified persons to serve as regular jurors this was all that was necessary under section 917 of the Code.

6. *Same; Jurors Drawn at Adjourned Term Who Served at Regular Term.*—Where after the adjournment of the regular term and before the convention of the adjourned term the jury commissioners re-filled the jury box and the presiding judge at the adjourned term drew therefrom the names of fifty special jurors, the fact that among the names drawn were those of two jurors who had served as regular jurors at the regular term of the court did not affect the validity of the special *venire*.

7. *Homicide; Admissibility of Evidence.*—Where the dead body of deceased was found on its back and two tracks were seen by the witness immediately near the body and on either side, the witness was properly permitted to stand up before the jury and show the position of the tracks by placing his feet with reference to the seam in the carpet on the floor in front of the jury.

8. *Same; Evidence in Inquest Held by Justice of the Peace.*— Where the inquest was held over the dead body by a justice of the peace it was without injury to the defendant to show by the justice of the peace that he was such officer, and that he held the inquest.

9. *Argument of Counsel to the Jury.*—Where the solicitor for the State related a joke to the jury in illustration of his argument it was within the bounds of proper forensic discussion, the joke not being related as a fact nor as evidence of any fact in the case.

10. *Homicide; Charge on Manslaughter.*—Where a charge in a criminal case pretermits inquiry as to the nature of the provocation of the passion it is properly refused; since there must be a concurrence of adequate provocation and sudden passion to reduce a homicide to manslaughter.

11. *Same; Charge as to Self-Defense.*—In a trial under an indictment for murder charges which do not set out the ingredients of self-defense are erroneous and properly refused.

12. *Argumentative charges are properly refused.*

APPEAL from Houston Circuit Court.

Heard before Hon. H. A. PEARCE.

The appellant in this case, Will Peel, was indicted for the murder of Will Canter, by shooting him with a gun, and was convicted of murder in the second degree and sentenced to the penitentiary for twenty-five years.

On the trial of the case the defendant moved to quash the indictment, which motion was overruled by the court, and to this ruling the defendant duly excepted. The grounds of the motion and the evidence relating thereto are set forth in the opinion.

The defendant also moved to quash the special *venire* served upon him. The court overruled the motion and to this ruling the defendant duly excepted. The several grounds of the motion are set forth in substance in the opinion, except the second, fourth and fifth grounds, which are as follows:

Second: The order of this court directing the drawing and serving of the *venire* or petit jurors served upon this defendant, made and entered on Thursday the eighth day of December, 1904, was void and without warrant or authority of law, because, on said day, namely, the eighth day of December, 1904, this court was not legally organized as a court, and was without power and authority to make said order for summoning and serving said *venire* of jurors.

Fourth: The regular *venire* of jurors drawn and summoned for the week of this court commencing December the twelfth, 1904, was not drawn and summoned according to law.

Fifth: The special *venire* of petit jurors drawn and summoned for the trial of this cause were not drawn and summoned according to law.

The evidence for the State tended to show that on the 19th day of September, 1904, the defendant shot and killed Will Canter; that shortly before the killing the deceased with others were in a field picking cotton; that the party left the field and went to the house of deceased and in the afternoon started back to the field, deceased carrying a pistol with him; that they went along the public road towards the field where they had been engaged, and when within a short distance of defendant's house.

which was on the same road, they saw defendant and his wife come out of the house and go towards the field and that defendant had his gun across his shoulder; that deceased and the others with him overtook defendant and his wife, when defendant engaged deceased in a conversation regarding a previous dispute between them, in the course of which, defendant took his gun off his shoulder, cursing deceased, and threw his gun up to shoot and deceased started to draw his pistol and as he did this defendant shot him.

The evidence for the defendant tended to show that when the defendant met him in the road he cursed him and engaged defendant in a dispute in the course of which deceased advanced towards him cursing again, drew his pistol from his breast and presented it towards defendant when the latter raised his gun and fired; that deceased endeavored to retreat and requested defendant not to have any difficulty with him.

The other facts of the case necessary to the understanding of the decision are sufficiently stated in the opinion.

Upon the introduction of all the evidence the defendant requested the court to give to the jury the following written charges and excepted to the court's refusal to give each of them:

1. The court charges the jury that if they believe from the evidence that the defendant was prompted to shoot Canter, the deceased, entirely because of passion suddenly aroused, then the jury cannot find the defendant guilty of murder in either degree.

2. If the jury believe from the evidence that deceased, Will Canter was a man of bad character; and that his character was bad as being turbulent, violent and bloodthirsty, and a fighting man, and as being a dangerous man; and that prior to the killing deceased had made threats to kill defendant, and that some of these threats had been communicated to the defendant before the killing, and that defendant was free from fault in bringing on the difficulty; and that at the time of firing the fatal shot defendant either was, or reasonably appeared to be, about to sustain grievous bodily harm, or lose his life at the hands of deceased; and that just prior to the time defendant shot deceased, deceased had drawn a pistol

[Peel v. The State.]

from his bosom and started to shoot defendant, defendant had the right to construe these acts on the part of deceased in the light of his character as a man and in the light of such threats.

3. If, upon all the evidence, the jury have a reasonable doubt that defendant did not act in self-defense in killing deceased, they must acquit him.

4. If, upon all the evidence, the jury have a reasonable doubt whether or not defendant acted in self-defense in killing deceased, he must be acquited.

5. If, the deceased is shown to be a man of turbulent, violent, blood-thirsty character, and to have made threats to kill defendant, some of which had been communicated to him before the killing, and if defendant was free from fault in bringing on the difficulty, and if just prior to the firing of the fatal shot, deceased drew a pistol, and raised his hand with a pistol in it within carrying distance for a pistol; then the defendant had a right to construe his conduct in the light of deceased's bad character and the threats made. And if, upon all the evidence, the jury do not believe beyond a reasonable doubt that defendant is guilty, they must acquit him.

No counsel marked for appellant.

MASSEY WILSON, Attorney-General for the State.— The action of the court in overruling the motion to quash the indictment of the court was proper. Judge Alston was authorized to convene the term of court under sections two and three of the Act of February 20th, 1899.

The fact that jurors were not summoned for the first week of the adjourned term did not affect the defendant's rights and he cannot complain.

The motion to quash the special *venire* was properly overruled. It appeared that after the adjournment of the regular term the jury commissioners met and refilled the jury box, and this accounted for the fact that two of the jurors drawn had served at the regular term.— *West v. State,* 118 Ala. 100.

Testimony of the witness Reynolds was properly admitted.—*Etheredge v. State,* 124 Ala. 106. There was no error in permitting the solicitor to prove that the witness

[Peel v. The State.]

Reynolds was a justice of the peace and that he held the coroner's inquest.—*Coleman v. State,* 63 Ala. 93; *Miller v. State,* 107 Ala. 40; Code section 3343.

The argument of the solicitor to which the defendant objected was merely the narration of a joke and was not made as a fact, and the solicitor did not intend, nor did the jury regard it as evidence.—*Cross v. State,* 68 Ala. 476.

Charge one was properly refused.—*Ragland v. State,* 125 Ala. 25.

Charges two and five were properly refused.—*Holmes v. State,* 100 Ala. 80; *Matthews v. State,* 136 Ala. 47; *Adams v. State,* 133 Ala. 166.

DENSON, J.—The fall term 1904, of the circuit court held for Houston county was organized on the 31st day of October, 1904, the day fixed by law upon which said term of said court should be convened. The court was organized and presided over during the first week of the term until the afternoon of the 4th of November, 1904, by the Hon. A. H. Alston, Supernumerary Judge for the State. On the 3rd day of November, 1904, the grand jury organized by the court (Judge Alston presiding) at the above named term, returned the indictment in this case against the defendant, Will Peel, charging him with murder in the first degree.

On the 4th of November, 1904, the Hon. H. A. Pearce, Judge of the 12th judicial circuit, relieved Judge Alston and presided over the court during the remainder of the term. On the same day, and after Judge Pearce had relieved Judge Alston and was discharging his duties as presiding judge of said court, the defendant filed a motion to quash the indictment. The business of the court not having been disposed of at the regular term an order was made by the court adjourning the court to December the 8th, 1904, the adjourned term to continue for the trial and disposition of civil and criminal cases until the court should be finally adjourned.

The motion to quash the indictment was renewed at the adjourned term, and on the hearing was overruled. The averments of the motion were proved. It was also shown that the Supernumerary Judge was directed and

[Peel v. The State.]

instructed by the Governor to hold the first week of the fall term 1904 of the circuit court for Houston county.

Section 2 of the Act of February the 20th, 1899, which created the office of Supernumerary Judge, provides, that such judge shall have power and authority, under the direction of the Governor, to hold any regular term of the circuit court or chancery court in this state, and to exercise all the powers and privileges and perform all the duties of circuit judges and chancellors while in office. Section 3 of said Act provides, that it shall be the duty of every circuit judge and chancellor, when from sickness or from being engaged in holding a special term of court or from any other cause he cannot attend a regular term of his court, to notify the Governor of that fact, etc. From this Act it seems, that regardless of the cause, if the circuit judge cannot hold the regular term of the court, the Supernumerary Judge, when directed by the Governor, may do so. The proof, while it showed that the circuit judge was in Dothan, also showed that he did not appear and hold the court. We will presume in the absence of any thing to the contrary, that the circuit judge had notified the Governor that he could not attend the regular term of the court during the first week, and that it was upon such notification that the Governor directed the Supernumerary Judge to hold the court for the first week. Nor was it essential to the regularity of the organization of the court, that the minute entry showing the organization of the court by the Supernumerary Judge should have set forth any reason why the circuit judge was not present to organize the court. The motion to quash the indictment was properly overruled.

The defendant, on the 12th of December, 1904, filed a motion to quash the special venire served upon him, which motion contained many grounds the first of which is, in substance, that the order made by the court at the regular fall term, 1904, of the court adjourning the court until Thursday, December 8th, 1904, provided for jurors to be summoned for the week of said adjourned term beginning Monday, December 12th, 1904, but made no provision for jurors to serve any portion of the week including Thursday the 8th day of December, 1904. We cannot see how the fact that no jurors were ordered for

the first week of the adjourned term could possibly have affected any right of the defendant or the validity of the venire. On Thursday, the 8th of December, the defendant being present, the court made an order setting Monday, December 12th, 1904, as the day for the trial of this case, and of course if jurors had been ordered summoned for the first week of the adjourned term they could not have formed a part of the venire in the defendant's case, set as it was, for a day in the next week. It is not necessary for us to inquire what business the court transacted during the first week of the adjourned term other than that which appertained to the defendant's case. It did not concern the defendant whether the court was engaged in the trial of cases or not.

Section 917 of the Code which relates to adjourned terms of the circuit court, with reference to the order for jurors, provides as follows: "In the entry of such adjournment, the order in which the unfinished business will be transacted will be prescribed, and all necessary orders made for summoning jurors to serve at the adjourned term." We think in the light of the statute, that the objection made in the 3rd ground of the motion to that part of the order of the court which relates to summoning jurors for the adjourned term, is untenable. The order in this respect was all that was necessary under the statute.

The second, fourth and fifth grounds of the motion state mere conclusions; no facts are set out showing in what respect the venires were not drawn and summoned according to law.

The sixth ground of the motion shows that two of the fifty special jurors drawn on the 8th of December in this case, served as regular jurors at the regular term in October 1904. The record shows that after the court adjourned to convene again on December the 8th, and before it did convene on that day, the jury commissioners at the time provided by law refilled the jury box and from the box so refilled. the presiding judge drew the names of the fifty special jurors, among the names drawn were those of F. M. Paramore and J. D. Norrell. Under the facts above stated, the fact that the two jurors named, served as regular jurors at the regular term of the court

held in October, did not affect the validity of the special venire:—*Arps' case,* 97 Ala. 5, 12 South. 301.

The witness Reynolds, testified that he saw the body of the deceased a short time after he was killed at the place of the killing; that when he reached the body it was on the back, the feet towards the south and the head towards the north, the left hand rested on the body, and the right hand was raised and resting over backwards from the head, there was a pistol in the right hand, also blood in the right hand, there was no blood on the top side of the pistol but the bottom side of the pistol where it lay in the hand was bloody. Witness then testified that he saw two tracks immediately near the body, the right foot track pointed the toe towards the body, and the left foot track pointed the heel towards the body and was on the opposite side of the body from the right foot track, the left track made a slanting impression, slightly backwards. He testified that he did not see the person make the tracks. The solicitor then asked the witness to stand up before the jury and show how the tracks were. The defendant objected to the witness showing how the tracks were made, but the court overruled the objection. The floor in front of the jury was carpeted and there was a seam in the carpeting which ran east and west. The witness answering the question, pointed to the seam in the carpet, and said, let this seam represent the body of the deceased, and placing his right foot near the seam on the south side with the toe of the foot pointing towards the seam and his left foot on the opposite side about two or two and one-half feet from the other foot and the heel of the shoe towards the seam, while standing in this position told the jury, that the position of his feet on the floor with reference to the seam indicated the position of the tracks with reference to the dead body of Canter. Another witness had previously testified to the position of the tracks with reference to the body substantially as did witness Reynolds, and further testified that the tracks were larger than his and that he wore a number nine shoe. The defendant moved to exclude "the attitude and position of the witness while placing his feet on each side of the seam."

The only attitude and position of the witness presented to us by the bill of exceptions is that the witness was standing and that his feet were in the position above stated. It seems to us that the position which the evidence shows the witness placed his feet in with reference to the seam, corresponded precisely with his evidence as to the position of the tracks with reference to the body. The position of witness' feet with reference to the seam, was evidence similar in character to a diagram of the scene of the difficulty showing the relative position of the body of the deceased and the tracks. The statement of the witness that the position of his feet on the floor and with reference to the seam indicated the position of the tracks with reference to the body of Canter, was a statement of a fact and not opinion. There was no error in the rulings of the court overruling the objections to the question and the motion to exclude the evidence.—1 Mayfield's Dig. p. 320, § § 155, 158.

The court against the objection of the defendant permitted the solicitor to ask witness Reynolds if he was a justice of the peace. The witness answered that he was. Against the objection and and exception of the defendant the court then permitted the witness to testify that he held an inquest over the body of the deceased. We see that the purpose in asking the witness whether or not he was a justice of the peace was to show his authority for holding an inquest. It would have been entirely competent for the state to have proved by the witness that as acting coroner at such inquest he made an examination of the body and located the wounds and ascertained the nature of them. As the proof went no further than to show the inquest was held we do not see how it could possibly have injured the defendant.—§ 4333 Code 1896.

The relating by the solicitor of the joke in illustration of his argument, was within the bounds of proper forensic discussion. He did not relate the joke as a fact nor as evidence of any fact in the case. It has been heretofore said by this court, "It is only when the statement is of a substantive, outside fact—stated as fact—and which manifestly bears on a material inquiry before the jury, that the court can interfere, and arrest discussion." *Cross'*, 68 Ala. 476; *Cunningham's case,* 117 Ala. 59, 23

South. 693; *Brown's case,* 121 Ala. 9, 25 South. 744.

This brings us to the consideration of the charges refused to the defendant: Charge 1 pretermits any inquiry as to the nature of the provocation of the passion. There must be a concurrence of adequate provocation and sudden passion to reduce a homicide to manslaughter.—*Mitchell's case,* 60 Ala. 26; *Prior's case,* 77 Ala. 56; *Johnson's case,* 133 Ala. 38, 31 South. 951; *Gregory's case,* 37 So. Rep. 259; Clark's Man. Cr. Law, § § 419, 421. Futhermore, the charge leaves out of consideration the evidence tending to show that the defendant brought on the difficulty.—*Adam's case,* 133 Ala. 166, (chg. 8), 31 South. 851.

Charges 3 and 4, do not set out the ingredients of self-defense. Such charges have been frequently condemned. —*Roden's case,* 97 Ala. 54, 12 So. 419; *Miller's case,* 107 *Ala.* 42, 19 South. 37; *McLeroy's case,* 120 Ala. 274, 25 South. 247; *Stewart's case,* 133 Ala. 105, 31 South. 944.

Charges 2 and 5 are argumentative and for this reason were properly refused. Charge five is also elliptical.— *Campbell's case,* 133 Ala. 81, 31 South. 802; *Stewart's case, supra.*

There is no error in the record and the judgment of conviction is affirmed.

Affirmed.

McCLELLAN, C. J., HARALSON and DOWDELL, JJ., concurring.