# Moulton v. The State.

### ' Murder.

### (Feb. 15, 1917. 74 South. 454.)

1. **Criminal Law; Argument of Solicitor; Race Prejudice.**—In a prosecution for murder, statement of solicitor, "If you do not hang this negro, you will have a similar crime in this county in six months," was improper and prejudicial, being an appeal to race prejudice.

2. **Criminal Law; Improper Remarks by Solicitor; Correction by Charge.** —In a prosecution for murder, solicitor's remarks in his opening argument, "If you do not hang this negro, you will have a similar crime in this county in six months," held not cured by a later charge, to effect that jury were not to consider remarks for state in reference to white and black races, although it would not arouse passion of ordinary intelligent persons.

3. **Criminal Law; Appeal and Error; Prejudicial Remarks in Charge by Court.**—In a prosecution for murder, opening remarks in charge, "For the first time in the history of this court since the appointment of an official stenographer, so far as I am advised, the judge of the court has been requested to render his charge to the jury in writing," held reversible error, being a reflection on defendant, who under Code 1907, section 5363, was entitled to a written charge.

APPEAL from Montgomery City Court.

Heard before Hon. GASTON GUNTER.

Andrew Moulton was convicted of murder and he appeals. Reversed and remanded.

RUSHTON, WILLIAMS & CRENSHAW and BECKWITH & DAVIDSON for appellant. W. L. MARTIN, Attorney General, and HARWELL G. DAVIS, Assistant Attorney General, for appellee.

PER CURIAM.—The brief for defendant, appellant, complains of other things that occurred during the trial, but only two exceptions were reserved, and upon these the fate of the appeal must depend.

[Moulton v. The State.]

1. Defendant was tried on June 13, 1916, for the murder of a white man whom he had killed on the first day of the same month. The assistant solicitor, in the course of his opening argument for the prosecution, said to the jury:

"If you do not hang this negro, you will have a similar crime in this county in six months."

Defendant's objection was overruled, whereupon, after duly excepting, he moved the court to instruct the jury to disregard the said remark; but the court overruled the motion, whereupon the defendant again duly and legally excepted. The assistant solicitor, in his argument to the jury, made also the following statement:

"Unless you hang this negro, our white people living out in the country won't be safe; to let such crimes go unpunished will cause riots in our land."

Defendant objected to this remark, and the court sustained the objection. The bill of exceptions then makes the following recital:

"During the closing argument of special counsel representing the state, said counsel made the following statement to the jury in reply to certain remarks made by defendant's counsel in his address to the jury: "I hope to God the day will never come in this country when the heel of the Ethiopian will be on the neck of the Caucasian.' And further said that 'the defendant should not be convicted unless the jury was convinced to a moral certainty that the defendant was guilty.' "

It does not appear that defendant's counsel or the court took any notice of the remarks shown by the excerpt from the bill of exceptions stated last above. In his general oral charge to the jury the trial judge said to them: "In the first place I charge you that the arguments of counsel are not evidence in this case, and should be considered by you merely as explaining the evidence so as to enable you to reach a fair and impartial verdict. I, therefore, exclude from your consideration the several remarks made by the solicitor for the state in reference to the white and black races, as I do not think they will help you in the consideration of the evidence, although they are not of such a character as would tend to inflame or arouse the passions of any ordinarily intelligent person."

(1, 2) Dissociated from other peculiar features of the trial which, to use the language of the decision in *Birmingham Rail-*

[Moulton v. The State.]

*way v. Gonzalez,* 183 Ala. 273, 287, 61 South. 80, 84 (Ann. Cas. 1916A, 543), created "the general atmosphere of the case," the court would not be inclined to attach importance to that remark of the assistant solicitor as to which the trial court's ruling necessitated an exception by the defendant. In a different atmosphere the reference to defendant as a negro and the statement that, unless the defendant should be hanged, the county would have a similar crime in six months might be permitted to pass as belonging to that class of hasty or exaggerated statements of opinion, not facts, counsel often make in the heat of debate, which do not, and are not expected to become, factors in the formulation of the verdict, and which, while improper, are usually valued at their true worth.—*Cross v. State,* 68 Ala. 484. But, looking to the whole record as it stood at the time when this exception was reserved, considering that in the evidence, even in that introduced by the prosecution, there was a strong tendency toward the establishment of a state of facts more favorable to defendant than that indicated by the jury's finding, considering the general conditions surrounding the trial, all of which had before that appeared in this cause, and the menace of it all to a calm and dispassionate application of a just and humane law, the court is of opinion that the matter here brought into review involved an appeal to race prejudice, and should have been so recognized and treated at the time of the ruling upon it, and, not only so, but the innately evil capacity and tendency of the argument were in short order practically demonstrated by other breaches of the privilege of argument of an even more obviously harmful character. Authority for the holding that the judgment should be reversed on this exception may be found in *Tannehill v. State,* 159 Ala. 51, 48 South. 662, where many cases are cited; in *James v. State,* 170 Ala. 72, 54 South. 494, where the conviction was reversed because the solicitor had said to the jury that, "If the negro was taken out of court, there would not be much left;" in *Simmons v. State,* 14 Ala. App. 103, 71 South. 979, where the Court of Appeals reversed the judgment because the solicitor had said, "You must deal with a negro in the light of the fact that he is a negro," etc., the court saying, "The fact that the defendant was of the negro race did not deprive him of the equal protection of the law, or necessarily discredit his testimony, and should not have been used in argument as a means of arraying the prejudices of the jury against

him;" and in *Taylor v. State,* 50 Tex. Cr. R. 560, 100 S. W. 393;
*State v. Jones,* 127 La. 694, 53 South. 959; *State v. Lee,* 130 La.
477, 58 South. 155; *Hampton v. State,* 88 Miss. 257, 40 South.
545, 117 Am. St. Rep. 740; *Harris v. State,* 96 Miss. 379, 50
South. 626; *Hardaway v. State,* 99 Miss. 223, 54 South. 833, Ann.
Cas. 1913D, 1166; *Collins v. State,* 100 Miss. 435, 56 South. 527;
*Vickers v. U. S.,* 1 Okl. Cr. R. 452, 98 Pac. 467; *State v. Cook,*
132 Mo. App. 167, 112 S. W. 710; *Battle v. U. S.,* 209 U. S. 36,
28 Sup. Ct. 422, 52 L. Ed. 670.

True it is that the court in its general oral charge to the jury
seems to have recognized the capacity for harm contained in the
cumulative appeals to prejudice shown by the bill of exceptions,
but this court has not approved as altogether effectual the method
of treating definite error by subsequent mere general statements
of exclusion.—*Varnon v. Nabors,* 189 Ala. 464, 66 South. 593. It
is to be noted also that the court's remedial remarks to the jury,
while expressed in general terms, minimized rather than
reproved the arguments in which counsel had indulged,
whereas this court has held even in civil cases that where
improper, though not incurable, suggestions may have fallen
upon fruitful ground, the effort of the trial court should be by
specific, clear, and emphatic instruction, to reprobate the argu-
ment and set the jury on the way to a proper verdict.—*Wolffe v.
Minnis,* 74 Ala. 386. This court in *Tannehill v. State, supra,*
observed that courts in other jurisdictions had held, on what
seemed to be good reason, that an appeal to race prejudice con-
stitutes so serious a breach of the privilege of argument that
even the specifically directed interference of the court cannot
suffice to nullify its prejudicial effect. However, the court, going
so far only as the exigency of that case required, held merely
that error had intervened. Probably the safe middle course in
all such cases—cases of appeal to race prejudice included—is
indicated by the following language of the court in *Birmingham
Railway v. Gonzalez, supra*: "Each case of this character must
be decided upon its own merits. There is no horizontal rule by
which these qualities [the prejudicial qualities of improper re-
marks in argument to the jury] can be ascertained in all cases.
Much will depend upon the issues, the parties, and the general
atmosphere of the particular case."

True it is, also, that on the occasion of the next manifestation
of the race idea the court did all that it was requested by the

defendant to do, and sustained an objection, and that the last appeal to that bias (that in which counsel expressed the hope, hardly required by any duty or necessity of a situation of which there can be no reasonable fear, that the heel of the Ethiopian might never be on the neck of the Caucasian) is extenuated by the recitals of the bill of exceptions that this statement was made in reply to "certain remarks" made by defendant's counsel in his remarks to the jury, and by his apparently contemporary concession that defendant should not be convicted unless the jury were convicted to a moral certainty of his guilt; but, while it is not easy in the circumstances of this case to conceive what "certain remarks" responsible counsel could have made that required the set-off of an appeal to race prejudice (certainly defendant had no such appeal) and while the court in a case of this character is interested in knowing the real means by which the conviction is procured rather than in the effect of the perfunctory concession of a legal truism, it has not referred to either or both of these later statements by counsel as constituting reviewable or reversible error in the absence of a motion for a new trial—such motions in criminal cases have been made reviewable by the statute (Code, § 2846, as amended by the act of September 22, 1915; Acts, p. 722)—but only as evidencing and illustrating the probable prejudicial effect of the court's ruling on the matter reserved for review by defendant's first exception taken in the court below. The court holds, therefore, upon due consideration of all the facts in this case, that for the ruling on the solicitor's argument the judgment of conviction must be reversed.

(3) 2. The bill of exceptions shows in the next place that defendant required that the judge should charge the jury in writing as provided by section 5363 of the Code; that the evidence and the arguments of counsel were finished about 7 p. m.; that at 10:30 p. m., the judge was ready and did at that time read his charge, the opening paragraph of which was as follows: *"For the first time in the history of this court since the appointment of an official stenographer so far as I am advised, the judge of the court has been requested to render his charge to the jury in writing.* This is a privilege which the law gives, but whether I will be able to make the law in this case more plain to you in a written charge than I could by minutely explaining it to you orally it matters not."

[Moulton v. The State.]

Defendant duly excepted to that part of the foregoing which we have written in italics, and the subject-matter of this exception is urged for error. In the matter of exceptions to casual remarks by the court which lay down no proposition of law for the guidance of the jury nor give intimation of opinion as to any controverted question of material fact, it seems that the burden rests upon the appellant to show probable injury as a condition of reversal.—*Phillips v. Beene,* 16 Ala. 720; *Meinaka v. State,* 55 Ala. 47; *Campbell v. State,* 55 Ala. 80. In *Griffin v. State,* 90 Ala. 596, 8 South. 670, the court said: "Any statement by the court, however unintentional, made in the presence of the jury, calculated to control the jury in its consideration of the weight to be given to testimony, will work a reversal, unless it be clearly shown that such remarks have been explained and excluded from them. It may be thought that the criticism of the court is too restricted and technical; but the principle involved is of such paramount importance it would be dangerous to permit the least infringement of the rule to pass without correction. The separate province of the court and of the jury must be jealously guarded, carefully recognized and preserved. It is an 'anchor sure and steadfast' to protect those on trial for a violation of law, and to restrain the courts from the exercise of undue influence upon the juries, to whom is committed the important and exclusive right of weighing the evidence."

The statement made by the judge and now in question lays down no proposition of law, nor does it state or intimate any opinion as to any specific issue of controverted fact, but it was deliberately addressed to the jury, and defendant contends that its only possible purpose and tendency was to reflect upon the defense, or, more accurately speaking, upon counsel's conduct of the defense. The court here agrees that the remark should not have been made, and, considering the case as presented upon the whole record, considering, to recur to *Birmingham Railway v. Gonzalez, supra,* its "general atmosphere," that the trial court in making it to the jury, thus deliberately, committed reversible error. If a judgment of error at this point depended upon a finding that the trial court intended or supposed that this part of its charge would have any effect on the course or result of the trial, there would be no hesitation in our denial of reversible error; but it is matter of common knowledge that jurors are very susceptible to the influence of the presiding judge, watching

[Moulton v. The State.]

him with a quick understanding of every indication of opinion, and while we are not to be misled into setting up a too exacting standing for trial judges, we must consider the subject of this exception with a view to its capacity of interpretation as an index of what the judge thought of the accused, his counsel, or his case. Indulgently considered, it seems to have been nothing more than an expression of irritation that the request for a written charge should have been made in the conditions then and there obtaining. But the occasion was charged with grave responsibility; the expression of the judge's opinion was given in formal charge to the jury and had every appearance of great deliberation. It cannot be assumed that the jury gave it no consideration. At best it was erroneous, and it carried a suggestion that should have been carefully avoided. It carried a necessary implication, a forcible suggestion, that the prisoner, or his counsel, was engaged in a useless performance and unnecessarily delaying the rapid progress of the case to a conclusion. It thus reflected unfavorably upon the merits of the defense, though, perhaps, not so directly as to fall within the rule of *Griffin v. State, supra.* But the defendant had only demanded a law-given right, and it should have been conceded without unfavorable comment. In some jurisdictions the appellate courts take the view that it is impossible to determine the extent to which the rights of a party may have been prejudiced by the unfavorable suggestions of the trial judge, and for that reason reversals are ordered in such cases.—21 Ency. Pl. & Pr. 994. The court here finds no need to go that far at this time; its decision is simply this: That the part of the charge to which exception was reserved was improper, and in the peculiar circumstances of this case probably prejudicial to the defendant; it may have been highly prejudicial. Therefore the court holds it for reversible error.

Reversed and remanded. All the Justices concur except McCLELLAN, J., who dissents.

McCLELLAN, J.—(dissenting).—I am unable to concur in the reversal of the judgment on the two grounds on which the conclusion to reverse is builded. These grounds are said to exist in the action of the trial court in overruling an objection to a statement made by the solicitor in his opening argument to the jury and in a statement made by the trial judge in the first sen-

tences of his written charge to the jury. It is best to take from the bill of exceptions itself the recital of these matters: "During the course of his argument to the jury, the assistant solicitor made the following statement: 'If you do not hang this negro, you will have a similar crime in this county in six months.' The defendant duly and legally objected to said remark of the assistant solicitor, but the court overruled said objection, to which action of the court the defendant then and there duly and legally excepted. The defendant also moved the court to instruct the jury to disregard said remarks, but the court overruled said motion, and to the action of the court in overruling said motion the defendant then and there duly and legally excepted."

The other basis for imputation of error is this: "Gentlemen of the jury: For the first time in the history of this court since the appointment of an official stenographer, so far as I am advised, the judge of the court has been requested to render his charge to the jury in writing."

This statement of the solicitor is the only statement made in argument to which the defendant reserved an exception at the time an adverse ruling by the court was made. The other objection interposed by the defendant to statements made by the solicitor in his opening argument to the jury evoked a ruling in favor of the defendant. There was no objection whatever to the statement attributed to special counsel when he was making the closing argument for the state "in reply," to quote the bill of exceptions, "to certain remarks made by defendant's counsel in his address to the jury." There was no motion made by the defendant at any stage of the case seeking to withdraw the case from the jury on account of statements made in argument. —*Johnson's Case*, 102 Ala. 1, 17, 16 South. 99. No motion was made for a new trial, as might have been done under the new practice established by the act approved September 22, 1915 (Gen. Acts 1915, p. 722). It is therefore manifest that error to reverse can, under long and universally recognized practice in this state, he predicated *alone* of error in one of the two clearly defined particulars stated. In respect of such cases as this, this court is an appellate court only; and, within its proper function, it can only review and revise particular matters efficiently reserved for its consideration in the court below. It is, in my opinion, a complete departure from the unvarying practice in this court to introduce error into the action of the trial court

[Moulton v. The State.]

by reference to matters not embraced within the exception, or subsequently, to the ruling, occurring. The court has invariably presumed the absence of error in the trial court until error was shown on the face of the record. It has invariably held that the bill of exceptions must be "construed most strongly against the party excepting, and if it will admit of two constructions, one of which will reverse, and the other support, the judgment, the latter construction will be adopted."—*McGehee's Case,* 52 Ala. 224; *Dickens' Case,* 142 Ala. 49, 39 South. 14, 110 Am. St. Rep. 17; *Dowling's Case,* 151 Ala. 131, 44 South.. 4C3. It has likewise invariably ruled that an exception to the argument of counsel that embraces matter not erroneous cannot prevail; the reason being, obviously, that the court will not separate the bad from the good, to the end that a judgment should be avoided.

In the first place, I cannot see that the statement with reference to which the exception was reserved was error at all. The court has not so held in this case except by giving a vitalizing effect to other statements of counsel, subsequently made, to which no exception was reserved. There was not in the remark to which the exception was reserved the slightest appeal to race prejudice. To interpret it to such an effect is, it seems to me, rationally impossible. It was a general statement of prophetic opinion, and that only. It asserted no fact. The only fact it implied was that this defendant was a member of the negro race, a fact obvious to all and undisputed. Unless it can be said to be error to say that one on trial is a member of the negro race, then certainly the basis of this exception was not an improper or erroneous declaration by the solicitor. Very much stronger statements in arguments to juries touching the negro race have been held not to constitute error. In the case of *Brown v. State,* 121 Ala. 9, 25 South. 744, where the defendant was on trial on an indictment for rape, the solicitor in his closing argument to the jury several times characterized the defendant as having a foul heart, with being a fiend, a demon, "and appealed to the jury to convict the defendant in order to prevent innocent little *white* girls from such fiends and demons as the defendant [italics supplied]." The court, notwithstanding, affirmed the judgment of conviction. This case was approvingly cited in *Peel's Case,* 144 Ala. 134, 135, 39 South. 251. In *Dennis v. State,* 139 Ala. 109, 35 South. 651, the court affirmed a judgment, in review of exception appropriately taken, notwithstanding the solicitor

had said to the jury: "You gentlemen know the evils attendant upon these crap games; a crowd of negroes with a bottle of whisky in one pocket and a pistol in the other, get together to gamble, and you know what crimes grow out of these meetings."

In *Jackson's Case*, 136 Ala. 22, 34 South. 188, where the defendant was on trial for murder, the solicitor said to the jury in his argument: "Mob law must be stopped . If a crowd of negroes take a negro out and hang him, and if the jury acquit the defendant, where they have evidence to convict him as you have in this case, then the first thing you know, they will be taking a white man out and hanging him."

To seasonable exception reserved to review this statement of the solicitor, this court responded as follows:

"The evidence tended to show that the deceased was hanged by a mob, and that the defendant participated in the lynching. Under this evidence, the solicitor in his remarks to the jury, and which were objected to by the defendant, did not exceed the bounds of legitimate argument."

When the only remark of the solicitor to which an exception was reserved in this case is contrasted with the remarks upon which the court rested a pronouncement of error and a reversal in *Tannehill v. State*, 159 Ala. 52, 48 South. 662, it will readily appear that the *Tannehill Case* cannot be employed as an authority to support the conclusion that the matter here excepted to was error. There the court interpreted the remarks of the solicitor as appealing to race prejudice. It takes, in my opinion, some stretch of the imagination to find in the remarks of the solicitor an *appeal* to race *prejudice*. But, be that as it may, *Tannehill's Case* is without bearing on the single exception in this connection to which this court can devote its powers of review. In *James v. State*, 170 Ala. 74, 54 South. 494, the solicitor said:

"If the negro was taken out of court, there would not be much left."

Following what was supposed to be an authority afforded by *Tannehill's Case, supra,* the judgment of conviction was reversed. If the *James Case* is to be justified at all, it must be upon the theory that the statement of the solicitor was the assertion of a fact not in evidence. Again, if it can be imagined that the mere expression of the solicitor's prophetic opinion was error, it was, in my opinion, entirely removed by this specific, emphatic,

condemnatory declaration by the court to the jury in his written charge: "In the first place, I charge you that the arguments of counsel are not evidence in this case, and should be considered by you merely as explaining the evidence so as to enable you to reach a fair and impartial verdict. I therefore exclude from your consideration the several remarks made by the solicitor for the state in reference to the white and black races, as I do not think that they will help you in the consideration of the evidence, although they are not of such a character as would tend to inflame or arouse the passions of any ordinarily intelligent person."

That the defendant was, at the time, satisfied with the court's effort to remove all possible prejudice that might have resulted from statements made by the solicitor in his argument to the jury is sufficiently shown by the fact that no request of the court to do anything more in that regard was made.

When it is considered that the bill of exceptions expressly affirms that the remarks attributed to the special counsel in his closing argument to the jury were "in reply to certain statements made by defendant's counsel in his address to the jury;" when it is considered that no objection was made to this argument of the special counsel, and no exception of course reserved to any ruling of the court thereon; when it is considered that the improper statement by the solicitor, to which the court sustained defendant's objection, was made subsequent to the ruling made the basis of the exception under consideration; and when it is considered that the unobjected to remarks of the special counsel were made subsequent to the ruling of the court to which the defendant reserved an exception—it is impossible, it seems to me, to give to these subsequently transpiring events an effect to make that error which was before the subsequent events happened manifestly free from error. In *B. R., L. & P. Co. v. Gonzalez,* 183 Ala. 273, 284, 287, 61 South. 80, 84 (Ann. Cas. 1916A, 543), in review of a motion for new trial (no motion for new trial was made in the case at bar) it was said: "Upon a very full consideration of the two statements heretofore pointed out as improper, we cannot say, from the dim light afforded by the record, that they were, as made, either grossly improper or highly prejudicial. Each case of this character must be decided upon its own merits. There is no horizontal rule by which these qualities can be ascertained in all cases. Much will depend upon the issues, the parties, and the general atmosphere of the particu-

lar case. The final test is: Can the prejudicial tendency or effect of the improper statement be counteracted by an appropriate instruction from the trial judge, or is it probably beyond the reach of such remedial action?"

In employing the phrase "the general atmosphere of the particular case" it is very plain that the court did not intend to upset the established practice in this state. The phrase is metaphoric only. What it manifestly meant was that the circumstances disclosed by the record of the particular case would be looked to by the court in reviewing a ruling on *motion for new trial* in order to determine whether the improper remark, to which no effectual exception had been reserved, was either so grossly improper or highly prejudicial that it could not be eradicated by remedial action on the part of the trial judge. *Atmosphere* as there employed meant circumstances only. *Atmosphere* is too intangible to be put into a record; and unless its figurative use in legal writings is so understood, it has no place in legal parlance. *Atmosphere* may be put into a receptable; but *atmosphere* cannot be put into a record.

In my opinion, the exception taken to the passage in the written charge of the court is equally vain. In the first place, a quotation of the whole paragraph will serve to demonstrate the entire innocence of the expression of which the appellant complains: "Gentlemen of the jury, for the first time in the history of this court since the appointment of an official stenographer, so far as I am advised, the judge of the court has been requested to render his charge to the jury in writing. This is a privilege which the law gives, but whether I will be able to make the law in this case more plain to you in a written charge than I could by minutely explaining it to you orally, it matters not."

The bill of exceptions states that the trial was concluded at 4 p. m. and that in the presence of the jury the defendant requested the court to give its general charge to the jury in writing; and that the argument of counsel was concluded about 7 p. m. It is further recited that:

The court "thereupon took a recess until 8:30 p. m.  *  *  * The judge of the court came in a little later, but court was not reconvened on account of the reporter transcribing the written charge of the judge until 10:30 p. m., at which time the court read its general charge to the jury."

[Moulton v. The State.]

It is very natural that the judge should feel a disposition to make an explanation to the jury. He stated that this privilege which the defendant had claimed was one given the defendant by law. His expression following that was purely explanatory. The only possible implication from the whole statement made by the judge was that he thought the requirement, the claim of the privilege the law gives, was a useless requirement. He stated therein no law except the law that confers on the defendant the privilege he claimed. He did not allude in the remotest degree to the merits of the cause, nor to the guilt or innocence of the accused. He did not in any way criticise the conduct of the defense under the management of defendant's counsel. To repeat: He simply expressed his view that it was useless with an official stenographer serving the court to claim the privilege then claimed, for the first time, so far as he was advised, since the court had been served by an official stenographer. That the proceeding was a useless ceremony is obvious when the purpose of the ancient rule, whereby the judge is required on request of the party to write out his charge, is considered—a purpose that is fully met and conserved by the law's provision for an official to take down the oral charge of the court. In *Phillips v. Beene*, 16 Ala. 720, it was pertinently said: "It cannot be seriously contended that every expression of opinion by the court, during the progress of the trial, if erroneous, shall furnish ground for reversal. But such opinion must, in some manner, influence the result of the cause, or be supposed to do so, by being given in charge to the jury, or by a refusal to charge, or by being connected with the exclusion or admission of the evidence."

It requires, it seems to me, a most remarkable exercise of the most active imagination to conclude that this statement of the trial judge could have had any possible effect upon the verdict reached by the jury in this case.

I, therefore, dissent from the reversal of the judgment on the grounds on which that conclusion is builded.