# Reeves v. The State.

## *Murder.*

(Decided April 21, 1914.   65 South. 160.)

1. *Homicide; Manslaughter.*—Manslaughter is a killing in sudden passion, under sufficient provocation, and without malice.

2. *Same; Provocation.*—Mere words, however insulting, will not reduce a homicide to manslaughter. It is necessary that the provocation be at least an assault actually committed or threatened under circumstances calculated to reasonably convince the mind that defendant believed he would be presently assaulted, and which caused him to commit the act as a consequence of the passion thereby engendered.

3. *Same; Inconsistent Defenses.*—The fact that defendant insisted that he acted in self-defense would not have the effect to preclude him from showing that the offense was committed under circumstances reducing it from murder to manslaughter.

4. *Same; Jury Question.*—Under the evidence in this case it was a question for the jury whether the killing was the result of sudden passion aroused by sufficient provocation.

5. *Insane Persons; Order Committing; Conclusiveness.*—An order by the judge of the law and equity court of Morgan county committing the defendant to the state asylum for the insane, made in an ex parte proceeding under section 7180, Code 1907, is not conclusive or res judicata on the question of defendant's insanity in a subsequent prosecution for homicide.

6. *Trial; Province of Court and Jury.*—The jury are the exclusive judges of the credibility of the evidence, and the court of its admissibility.

APPEAL from Lawrence Circuit Court.

Heard before D. C. ALMON.

Jack Reeves was convicted of murder and he appeals. Reversed and remanded.

CALLAHAN & HARRIS, for appellant.   The court should have charged the jury upon all the decrees of homicide included in the indictment, as the evidence made it a question for the jury whether there was sufficient provocation to reduce the offense from murder to manslaugh-

ter.—*Dennis v. State,* 112 Ala. 67; *So. Ry. v. Burgess,* 143 Ala. 364; *Smith v. State,* 83 Ala. 28; *Mitchell v. State,* 60 Ala. 32. The fact that defendant set up self-defense did not preclude him from insisting that there was sufficient provocation to reduce the grade of the offense.—*Henwood v. People,* 129 Pac. 1010; *Hooks v. State,* 99 Ala. 168.

R. C. BRICKELL, Attorney General, and T. H. SEAY, Assistant Attorney General, for the State. However opprobrious, mere words can never reduce a homicide to manslaughter.—*Mitchell v. State,* 60 Ala. 26. The court properly declined, therefore, to charge on the offense of manslaughter.—*Thomas v. State,* 28 South. 591; *Pierson v. State,* 99 Ala. 153; *Rogers v. State,* 117 Ala. 9; *Braham v. State,* 39 South. 919; *Gafford v. State,* 125 Ala. 1; *Fowler v. State,* 155 Ala. 27.

GARDNER, J.—The defendant was tried for the murder of one Clint Kelsoe, was convicted of murder in the second degree, and sentenced to imprisonment for a period of 30 years.

Before the jury retired, the court submitted to the jury two blank forms of verdict, one of which was appropriate for a conviction of murder in the first degree, and the other of murder in the second degree, and in so submitting these two forms cautioned the jury that the same were to be used only in the event they found the defendant guilty—that if they found the accused guilty they should use the form of verdict for murder in the first degree or murder in the second degree, corresponding to their decision as to his degree of guilt. The defendant then in open court, and before the jury retired, excepted to this action and charge of the court; but the exception was not addressed to the action of

the court in submitting blank forms, but because it withdrew from the jury the right to consider the guilt of defendant of manslaughter.

As we read this record, the action of the court amounted, in its legal effect, to an exclusion by the court, from the consideration of the jury, of the guilt of defendant of any lesser degree of homicide than that of murder. We are of the opinion, therefore, that the exception reserved, above noted, sufficiently presents for our consideration the question whether there was evidence before the jury which would justify the submission to them of the guilt of the defendant of manslaughter in the first degree. It seems that the same point is also presented in charges 1 and 2, requested by defendant and refused by the court. The above constitutes the sole question argued by counsel for appellant.

"Whether or not the homicide is the offspring of malice is the characteristic which distinguishes murder and manslaughter. In consideration of the infirmities of humanity, the law regards a sudden transport of passion, caused by adequate provocation, as sufficient to rebut the imputation of malice which would otherwise arise. In such case, the law imputes the homicide to inherent frailty, instead of malice, or formed design. *  *  * A killing in sudden passion, excited by sufficient provocation, without malice, is manslaughter, 'not because the law supposes that this passion made him (the slayer) unconscious of what he was about to do, and stripped the act of killing of an intent to commit it, but because it presumes that passion disturbed the sway of reason, and made him regardless of her admonitions.' "—*Smith v. State,* 83 Ala. 26, 3 South. 551.

"Mere words, no matter how insulting, never reduce a homicide to manslaughter. Manslaughter is the unlawful killing of a human being without malice; that is,

[Reeves v. The State.]

as the unpremeditated result of passion-heated blood—caused by a sudden, sufficient provocation. And such provocation can, in no case, be less than an assault, either actually committed, or menaced under such pending circumstances as reasonably to convince the mind that the accused has cause for believing, and did believe, he would be presently assaulted, and that he struck, not in consequence of a previously formed design, general or special, but in consequence of the passion suddenly aroused by the blow given, or apparently about to be given."—*Mitchell v. State,* 60 Ala. 26; *Ragland v. State,* 125 Ala. 12, 27 South. 983.

A defendant who claims to have acted in self-defense is not, in our opinion, thereby precluded from asserting that the homicide was committed under circumstances reducing it to manslaughter, where the evidence before the jury would so authorize, and this in substance was the holding of the Court of Appeals in the case of *Pearce v. State,* 4 Ala. App. 32, 58 South. 996.

As applicable to the further insistence of appellant in this case, we quote the following from the case of *Hooks v. State,* 99 Ala. 166, 13 South. 767: "Where one person detects another in the act of adultery with his wife, and immediately slays the adulterer or his wife, as matter of law the provocation is sufficient to reduce the killing to manslaughter. The law does not declare that anything less than actual sexual intercourse is a sufficient provocation, as a matter of law, to reduce the offense from murder to manslaughter. It may be that the detection of another, under circumstances such as testified to by the plaintiff, may provoke and engender passion to such a degree as to overthrow reason, and if, under the influence of passion thus aroused, he immediately attack the offending party and slay him, before cooling time has intervened, not from malice or

2—186

unlawful formed design, but from such passion thus provoked, the offense may be manslaughter.  *  *  * The principle we announce is that the *law* does not declare the provocation sufficient, unless the parties are detected in the act; but a *jury* may say whether the compromising position of the parties was sufficient to arouse passion in the husband to such a degree as to overthrow reason, just as a jury may say in some other cases whether the offense was the result of sudden and sufficient provocation to reduce the offense from murder to manslaughter." (Italics ours.)

To reduce a homicide to manslaughter, the killing must not merely be the result of passion suddenly aroused, but such passion must be produced by sufficient provocation. "There must be a concurrence of adequate provocation and sudden passion to reduce a homicide to manslaughter."—*Peel v. State,* 144 Ala. 125, 39 South. 251. The question in this case, therefore, is whether or not there was any evidence before the jury from which they could draw an inference that the killing was the result of passion suddenly aroused by sufficient provocation.

The homicide occurred in June, 1911, at a dance given at the house of one Johnson. The trial was had in June, 1913. Deceased was stabbed with a knife by the defendant, just over the heart, and died soon after the wound was inflicted. We will review briefly, in the opinion, only such portions of the testimony as we consider necessary to an understanding of the conclusion reached.

One Mat Chenault, on direct examination, testified in behalf of the defendant as follows: "I remember the occasion of Clint Kelsoe being killed at a dance at Johnson's house, several years ago. I knew Clint Kelsoe at that time. I saw him the night before the dance.

I had a conversation with him over at my house about the defendant and his wife. In that conversation with me he stated that he was going to have sexual intercourse with the defendant's wife the next night, there at the dance, or kill the defendant. I was not at the dance. I told Mitchell Reeves, the defendant's brother. I told him about the conversation the next day."

The witness Mitchell Reeves testified that he told his brother, the defendant, of the above conversation, just as defendant was going in the house at Johnson's the night of the killing.

Testimony was also offered as to the bad character of the deceased, in that community, for fighting, etc.

The defendant testified in his own behalf, but the short synopsis of his testimony following will suffice: That he was 19 years of age, and had been married over 2 years, and was married at the time of the difficulty with Kelsoe; that he went to a dance that night with his wife; that Kelsoe was there as they went into the house, and he shook hands with him, and they exchanged friendly salutations; that he was in the house 2 or 3 minutes, and walked out to the graveyard with several others, and remained 10 or 15 minutes. Just before coming back in the house his brother, Mitchell Reeves, called him to one side and told him of what Chenault had said, as to the threat deceased had made. After that he went into the house; then some one told him to get a partner for the dance, and he walked over to his wife, who said she did not want to dance.

We here quote the language of the witness: "I went ahead and got me another partner, Jim Black's daughter. I then saw Kelsoe go to my wife and say something to her, and she came across to me and asked me if I cared if she danced with him. I told her I did not, and she went across to where he was, and he handed her a

piece of white paper. She held it in her hand, and then I called her in the little side room just as quickly as I saw this, and asked her to let me see that note, and she slapped it in her mouth. Before we went in the room, my wife told him not to let me see the note, and he said, 'I don't care; if he raises up, I will shoot him,' and then I asked her in the room, and she slapped it in her mouth. I walked up by Kelsoe by the door where he was standing, and asked him if he meant what he said, and he throwed his hand on his back pocket and said, 'I will shoot you,' and then I stabbed him. I do not know when I got my knife out."

The witness further testified, on cross-examination, that his brother had told him of the threat about 10 minutes before the killing.

The state then offered Mrs. Johnson as a witness in rebuttal, to prove that defendant made a threat as he left the side room. The witness was in the side room when defendant and his wife entered. She stated that they just passed in the room, and were in there about a minute, and they "appeared to be a little bit excited."

It thus appears, according to the insistence of the defense, that what occurred at the time of the killing happened in rapid succession and in a short space of time; that about 10 minutes before the killing defendant had been told by his brother (we make reference, of course, to the testimony of the defendant) that deceased had said he was going to have sexual intercourse with defendant's wife that night or else kill defendant, and had been also told by his brother that deceased was going to borrow a gun or pistol with which to shoot defendant; that upon coming into the house he asked his wife to be his partner in the dance, and she declined; that he saw Kelsoe go to his wife and say something, whereupon she came to him and asked him if he cared if

she danced with deceased; that he consented, and she went to where Kelsoe was, who handed her a piece of white paper (afterwards referred to as a note), which she held in her hand; that he then immediately called her in the side room and asked her to let him see the note, and she "slapped it in her mouth," and that before they went in this room she had asked deceased not to let defendant see the note, to which deceased replied, "I don't care; if he raises up, I will shoot him;" that defendant then walked to where deceased was, and asked if he meant what he said; and that deceased threw his hand on his back pocket and said, "I will shoot you," and then defendant stabbed him. There is no evidence in the record disclosing previous bad feeling between parties.

We have summarized the most important part of the testimony of the defendant. We are not here concerned as to whether his evidence was contradicted, or was without sufficient corroboration, nor, in fact, as to whether it was true or false. It was not for the court to determine what weight the jury should give to this evidence, as they are made the exclusive judges of its credibility. "The province of court and jury are distinctly marked, and neither can lawfully invade the other."—*Dennis v. State,* 112 Ala. 64, 20 South. 925. The following quotation from the above-cited case of *Dennis v. State,* 112 Ala. page 67, 20 South. page 926, of opinion, is, in our opinion, appropriate here: "Because of the difficulty which sometimes arises to distinguish between the most aggravated cases of manslaughter is the first degree and the mildest type of murder in the second degree, it has been declared 'that it is much the safer rule to charge upon all the degrees of homicide included in the indictment when the party is on trial for murder, unless it is perfectly clear to the

judicial mind that there is no evidence tending to bring the offense within some particular degree.' "

From the combination of facts and circumstances as disclosed by this record, and as shown herein, we are of the opinion, and so hold, that whether or not the killing was the result of passion suddenly aroused by sufficient provocation, and, therefore, was without malice, was a question that should have been left to the determination of the jury, under proper instructions as to the law by the court. By the action of the court, as heretofore pointed out, the question of the guilt of the defendant of any lesser degree of homicide than murder —that is, manslaughter in the first degree—was, at least in legal effect, excluded from the consideration of the jury; and we conclude that this was error which must reverse the case.

We have here discussed the only question argued by counsel. We will make note, however, of one matter presented by the bill of exceptions. It was suggested to the court that the defendant was insane, and ought not to be placed on trial for that reason. Defendant, upon this issue, which was presented to and passed on by the jury, seemed to rely solely upon an order made by the judge of the law and equity court of Morgan county, committing him to the state asylum for the insane at Tuscaloosa; such order being made while defendant was confined in the jail of Morgan county after having been transferred to said jail on account of the unsafe condition of the jail of Lawrence county. The order made, and relied upon, was made in an ex parte proceeding authorized by section 7180 of the Code, and was not conclusive, nor res adjudicata, as to the question of insanity.—*Frederic v. Wilkins,* 182 Ala. 343, 62 South. 518. The court properly submitted the issue to the jury.

[Mackey v. The State.]

For the error above pointed out, the judgment of the court below is reversed, and the cause remanded. The defendant will remain in custody until discharged by due course of law.

Reversed and remanded.

ANDERSON, C. J., and MAYFIELD and SOMERVILLE, JJ., concur.