(78 South. 378)

VAUGHAN v. STATE. (6 Div. 685.)

(Supreme Court of Alabama. March 23, 1918.)

1. HOMICIDE ⏝309(4)—MANSLAUGHTER—INSTRUCTIONS.

Where it appeared that accused shot decedent after seeing him strike accused's father to the ground, evidence *held* to require submission of a charge on manslaughter; it being for the jury to say whether the fatal shot was fired by accused in a sudden passion excited by sufficient provocation.

2. CRIMINAL LAW ⏝665(1) — CONDUCT OF TRIAL—DISCRETION OF COURT.

It was not error to permit the solicitor to talk to the state's witnesses together before the commencement of the trial; such action being within the sound discretion of the court.

3. JURY ⏝125—CHALLENGES FOR CAUSE.

It was not error to permit the solicitor to challenge one juror for cause after having waived this course as to other jurors.

4. WITNESSES ⏝274(2)—CROSS-EXAMINATION —CREDIBILITY OF CHARACTER WITNESSES.

In a prosecution for murder, it was proper for the state to ask defendant's character witnesses on cross-examination if they had not heard of the defendant and his father being drunk and gambling with cards.

5. WITNESSES ⏝370(1)—CROSS-EXAMINATION —BIAS.

It is proper for the state on cross-examination to ask certain witnesses of accused if they did not drink together and play cards with defendant and his father; such evidence tending to show the relation existing between the parties, as bearing upon the question of bias.

6. HOMICIDE ⏝169(3)—EVIDENCE—ADMISSIBILITY.

In a prosecution for murder, although it was permissible to show that defendant's father, the assault on whom was the cause of the homicide, had intervened merely as peacemaker in a fight between deceased and another party, the details of the difficulty between deceased and such other were inadmissible, not shedding legitimate light upon the material questions involved in the trial.

McClellan and Sayre, JJ., dissenting.

---

⏝For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

[1] 200 Ala. 509.

Appeal from Circuit Court, Blount County; J. E. Blackwood, Judge.

Al. Henry Vaughan was convicted of murder in the second degree, and he appeals. Reversed and remanded.

Appellant and his father, Ake Vaughan, were jointly indicted by the grand jury of Blount county for the murder of one Richard Stephens. Appellant was separately tried and convicted of murder in the second degree; his punishment fixed at 21 years and 8 months. From the judgment of conviction, he prosecutes this appeal.

Some of the salient facts in regard to the difficulty resulting in the death of Richard. Stephens may be stated in substance as follows: On the evening of April 15, 1917, Richard Stephens with a group of several men was passing along a road where it crossed a certain creek near the home of one of the group, Doc Cox. The group was composed of Richard Stephens, the deceased, Tom Hill, Lon Wallace, Tom Cox, Doc Cox, and Pete Cox, and the father of the defendant, Ake Vaughan. It appears that at this point an altercation arose between the deceased and Lon Wallace, but no actual difficulty seems to have followed. The crowd then moved up along the road near to the barn of the witness Doc Cox—the distance was about a quarter of a mile—where there was a further quarrel between the deceased and Wallace. As the crowd moved along the road, Doc Cox and Tom Cox "dropped out," leaving in the crowd Pete Cox, Tom Hill, Ake Vaughan, Lon Wallace, and the deceased. These parties walked on until they reached a certain trail or pathway which is near the home of one John Bramlett, and also at the road which would lead to the home of the deceased, where (as the evidence tends to show) there was loud talking, cursing, and some indications of an effort to fight. At this particular point the defendant appeared on the scene with a companion; he and his companion having been elsewhere and not among the group of men referred to. The evidence tends to show that one of the men in the group was with the deceased, who seems to have been going in the direction of his home down the road. The defendant's father was seen to approach the deceased, and was struck on the head by the deceased with a glass demijohn, and knocked down. Just after the defendant's father was knocked down by the deceased, the defendant with a pistol fired at the deceased—one shot entering the back, and from which wound the deceased died in a short while. The defendant left the scene of difficulty, and that night traveled several miles into another county, where he was arrested. The evidence for the state tends to show that the defendant and his father were aggressors, and that the father of defendant approached the deceased in a threatening manner, and with murderous intent. The evidence for defendant tends to show that his father was not at fault in bringing on the difficulty with the deceased, and had no ill feelings towards deceased, but was only approaching him in order to get him to go home, and to prevent a difficulty between deceased and Lon Wallace; that as the defendant's father approached deceased, the latter threatened him, and then struck him on the head with the demijohn, knocking him to the ground, and causing him to be momentarily unconscious; that his father had no weapon, and had made no attempt to assault the deceased. The defendant's testimony further tends to show that as he and his companion arrived at the place where the difficulty occurred they heard much loud talking; that they attempted to hold and quiet Lon Wallace; that shortly after he (defendant) discovered his father near deceased, and saw the deceased strike his father the blow felling him to the ground, and at that instant he fired the fatal shot. The evidence shows that the group of men first referred to had been drinking. Some of the evidence tends to show that deceased and Lon Wallace were very greatly under the influence of liquor.

The court in its oral charge failed to instruct the jury on the law as to manslaughter in the first degree. The defendant requested the court in writing to instruct the jury as to the law of manslaughter in the first degree, under the evidence in the case, which the court refused. Several charges bearing upon manslaughter in the first degree were asked in writing and refused. The two charges passed upon in this opinion, and which were refused, are as follows:

"16. The court charges the jury that if Ake Vaughan was not free from fault, yet if you believe from a consideration of all the evidence you are reasonably satisfied that Al Henry Vaughan was free from fault in provoking the difficulty, and seeing his father suddenly knocked down by the deceased, and that acting under a sudden passion thus aroused, and without malice, shot and killed Stephens, he would not be guilty of any greater offense than manslaughter in the first degree."

"27. The court charges the jury that if Ake Vaughan in good faith went to where Stephens was to keep him from returning to a quarrel, or to keep him from committing a breach of the peace, and that the deceased did assault him and knocked him down, and that the defendant Ake Vaughan's son was near by, seeing his father thus knocked down, and if he himself was free from fault in bringing on such difficulty, and that his passion was by such knocking down of his father by Stephens suddenly aroused, and that he without premeditation and without malice, but prompted only by such sudden· passion, shot and killed Stephens, he would only be guilty of manslaughter in the first degree."

John A. Lusk, of Guntersville, and J. F. Kelton, of Oneonta, for appellant. W. L. Martin, Atty. Gen., and P. W. Turner, Asst. Atty. Gen., for the State.

GARDNER, J. The foregoing summary of. the evidence suffices as a general outline of the facts surrounding the difficulty. The defendant insists that he fired the fatal shot

in defense of his father, and he thereby assumed under the law the same attitude, so far as his right to invoke the doctrine of self-defense is concerned, which his father occupied with reference to the difficulty. Upon this theory the cause was tried. All the evidence tends to show that the defendant did not fire the fatal shot until after he had seen his father felled to the ground by the blow inflicted by deceased with a glass demijohn, and that he fired immediately upon seeing his father so struck. He had only recently arrived upon the scene, and the jury could infer that he had no knowledge of what had previously occurred. There was also evidence tending to show there were previously no ill feelings between the deceased and defendant or defendant's father.

The question is presented for determination here as to whether or not the facts and circumstances of this case call for instructions by the court to the jury upon manslaughter in the first degree. This we consider the question of prime importance on this appeal.

"Whether or not the homicide is the offspring of malice is the characteristic which distinguishes murder and manslaughter. In consideration of the infirmities of humanity, the law regards a sudden transport of passion, caused by adequate provocation, as sufficient to rebut the imputation of malice which would otherwise arise. In such case, the law imputes the homicide to inherent frailty, instead of malice, or formed design. * * * A killing in sudden passion, excited by sufficient provocation, without malice, is manslaughter." Reeves v. State, 186 Ala. 14, 65 South. 160.

"The distinction between murder and voluntary manslaughter is found in the dividing line between malicious action on the one hand and action in the heat of passion on the other. Malice and heat of passion cannot coexist. Again, voluntary manslaughter differs from homicide which the law deems excusable because committed in self-defense in that in the one case there is an apparent necessity for self-preservation to kill the aggressor, and in the other no necessity at all." 13 R. C. L. 786; State v. Roberts, 8 N. C. 349, 9 Am. Dec. 643.

"A killing in sudden passion excited by sufficient provocation, without malice, is manslaughter, 'not because the law supposes that this passion made him [the slayer] unconscious of what he was about to do, and stripped the act of killing of an intent to commit it, but because it presumes that passion disturbed the sway of reason, and made him regardless of her admonitions. It does not look upon him as temporarily deprived of intellect, and therefore not an accountable agent, but as one in whom the exercise of judgment is impeded by the violence of excitement and accountable therefor as an infirm human being.'" Smith v. State, 83 Ala. 26, 3 South. 551.

The case of Smith v. State, supra, is cited in note to Johnson v. State, 9 Ann. Cas. 923, where are to be found several authorities bearing upon the question of the extent of mental disturbance, essential to passion, which may reduce felonious killing to manslaughter. See, also, Martin v. State, 119 Ala. 1, 25 South. 255.

Much discussion of the question here under consideration is found in Commonwealth v. Paese, 220 Pa. 371, 69 Atl. 891, 17 L. R. A. (N.

S.) 795, 123 Am. St. Rep. 699, 13 Ann. Cas. 1081, and in the note thereto several authorities collected which are of interest in this connection. In that case the court recognized that a violent assault, or serious injury, to a near relative in the immediate presence of the defendant may be sufficient provocation to cause sudden passion to the extent of reducing the degree of homicide to that of manslaughter. The following excerpts from that opinion are here pertinent:

"What is sufficient provocation for this purpose has not been exactly defined, and is probably incapable of exact definition, for it must vary with the myriad shifting circumstances of men's temper and quarrels. It is a concession to the infirmity of human nature, not an excuse for undue or abnormal irascibility, and, therefore, to be considered in view of all the circumstances. * * * On the other hand, certain circumstances have been held to be sufficient provocation. Thus, in general, serious injury immediately inflicted or threatened, to wife (or husband), child or servant will, on account of the relationship of the parties, reduce the killing to manslaughter in similar cases as if the injury had been to self."

In the note to this case the author makes the following observation:

"The reported case draws a distinction between a homicide committed by a friend of the person killed or assaulted and a homicide committed by a relative of such person. On account of the relationship of the parties, it is usually held that the killing or assaulting of a near relative is a provocation legally sufficient to produce passion, which reduces to manslaughter a murder committed by a person while he is incapable of cool reflection."

A number of cases are there cited by the author in support of this statement, together with the following quotation from Guffee v. State, 8 Tex. App. 187:

"Certainly, to one at all familiar with the promptings of the human heart and the motives by which men are governed in their resentments and affections, it cannot be a matter of serious question that the death of a brother by the violence of another, in the immediate presence of one, is better calculated to produce in a person of ordinary temper, a greater degree of anger, rage, or resentment, than any of the causes particularly designated in the statute, and that such an occurrence is amply sufficient to render the mind incapable of cool reflection."

The question was squarely presented in the case of Pearce v. State, 4 Ala. App. 32, 58 South. 996, and that authority was cited with approval by this court in Reeves v. State, supra. In the Pearce Case it was said:

"It is not our understanding of the law that if a man provokes a difficulty, and then afterwards is forced, by an unanticipated deadly assault of his adversary, to take his adversary's life to protect his own, such a man is as matter of law necessarily guilty of murder in one of its degrees, and not of manslaughter in the first degree."

[1] We are of the opinion that under the evidence in this case it was for the jury to say whether or not the fatal shot was fired by the defendant in a sudden passion excited by sufficient provocation upon seeing his father struck to the ground. Pearce v. State,

supra; Wharton on Homicide (2d Ed.) § 446, and authorities supra.

Charges 16 and 27 embraced the constituent elements of manslaughter in the ·first degree, and are applicable to the tendencies of the evidence in this case. The defendant in no way received the benefit of a consideration by the jury of his guilt of this degree of the homicide. The right of the defendant to have the jury instructed as to the law of manslaughter in the first degree affected most seriously his substantial rights, and the refusal of charges 16 and 27 must work a reversal of the cause. Reeves v. State, supra.

[2, 3] We find no error in the action of the court in permitting the solicitor to talk to some of the state's witnesses together before the trial had begun. These are matters resting within the sound discretion of the court. Ryan v. Couch, 66 Ala. 244; 38 Cyc. p. 1369. Nor was there error in permitting the solicitor to challenge one juror for cause after having waived this course as to the other jurors. Harrison v. State, 79 Ala. 29.

[4] Upon cross-examination there is allowed great latitude. The defendant introduced a number of witnesses who testified to the good character of defendant and his father; the latter having also testified in the cause. Upon cross-examination of these witnesses the state was permitted to ask if they had not heard of the defendant and his father being drunk and gambling with cards. We are of the opinion that in this there was no reversible error. (Testimony that they had so heard of defendant and his father is permissible on cross-examination not as evidence affecting the character of the defendant, but as evidence affecting the credibility of the witnesses testifying to good character.) Carson v. State, 128 Ala. 58, 29 South. 608; Andrews v. State, 159 Ala. 14, 48 South. 858; Moulton v. State, 88 Ala. 116, 6 South. 758, 6 L. R. A. 301; Williams v. State, 144 Ala. 14, 40 South. 405; Smith v. State, 103 Ala. 57, 15 South. 866; Thompson v. State, 100 Ala. 70, 14 South. 878; Ingram v. State, 67 Ala. 67; 40 Cyc. p. 2496; Ency. of Ev. vol. 3, p. 49.

[5] The state also asked some of defendant's witnesses on cross-examination if they did not drink together and play cards with the defendant and his father. This was proper on cross-examination as tending to show the relation existing between the parties and the person for whom they testified as having some bearing before the jury on the question of bias. Rutledge v. Rowland, 161 Ala. 114, 49 South. 461.

[6] There was no evidence offered by the state tending to show that the defendant's father had been a party to any of the quarrels between deceased and Lon Wallace previous to the time when they reached the spot at which the killing occurred. It was proper, as the court permitted, that it be shown that the previous difficulty was between the deceased and said Wallace, and that the father of defendant had merely intervened as a peacemaker, and that such quarrels had been repeated at the different places; but we see no occasion for the details of the difficulty between Wallace and the deceased to be brought out. These details would shed no legitimate light upon the material questions here involved, and we are of the opinion that the court permitted sufficient evidence as to what occurred previously between Wallace and the deceased. What we have here said should be of sufficient guide for another trial.

For the error indicated, the judgment is reversed, and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and MAYFIELD, SOMERVILLE, and THOMAS, JJ., concur. McCLELLAN and SAYRE, JJ., dissent.