(117 So. 412)

## ROBERSON v. STATE. (8 Div. 9.)

Supreme Court of Alabama. June 14, 1928.

**1. Homicide ⬦35—Malice distinguishes murder from manslaughter.**

Whether or not homicide is offspring of malice is characteristic which distinguishes murder and manslaughter.

**2. Homicide ⬦45—Mere words, no matter how insulting, never reduce homicide to manslaughter.**

Mere words, no matter how insulting, never reduce homicide to manslaughter.

**3. Homicide ⬦35—"Manslaughter" is unlawful killing of human being without malice.**

"Manslaughter" is unlawful killing of human being without malice as unpremeditated result of passion, caused by sudden, sufficient provocation which can in no case be less than assault either actually committed or menaced, under circumstances reasonably convincing mind that accused believed he would be presently assaulted, and that he struck in consequence of passion suddenly aroused by blow given, or apparently about to be given.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Manslaughter.]

**4. Homicide ⬦42—Evidence deceased cursed defendant, drew pistol, and fired at defendant, before defendant fired, if believed, would authorize conviction for first degree manslaughter.**

Evidence tending to show that defendant, prosecuted for murder, addressed deceased in manner not calculated or intended to provoke difficulty, and that deceased angrily cursed defendant, drawing pistol, and firing it at defendant before defendant fired, if believed by jury, would authorize conviction of manslaughter in first degree.

**5. Homicide ⬦51—Evidence, if showing provocation was sought by defendant to enable him to execute his malice, would not suffice to reduce homicide to manslaughter.**

Evidence, showing previously existing bad feeling between parties, and threats by deceased against defendant, if showing that provocation sufficient to reduce offense to manslaughter was sought by defendant to end that he might have opportunity to execute his malice, would not show sufficient provocation to reduce homicide to manslaughter.

---

⬦For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**6. Criminal law ⊜⟹741(1), 742(1)—Truth of evidence and weight thereof held exclusively for jury.**

Truth 'or falsity of evidence or weight to be given thereto are matters exclusively within province of jury.

**7. Criminal law ⊜⟹731—Neither court nor jury can lawfully invade province of other.**

Province of court and jury are distinctly marked, and neither can lawfully invade other.

**8. Homicide ⊜⟹309(4)—Evidence of deceased's cursing defendant and firing ∙before defendant drew pistol presented jury question of defendant's guilt of manslaughter, requiring instruction thereon.**

In prosecution for murder, evidence tending to show defendant addressed deceased in manner not calculated to provoke difficulty, that deceased cursed defendant, drew pistol, and fired at defendant before defendant drew his pistol, presented jury question as to defendant's guilt of manslaughter in first degree, entitling defendant to have jury instructed on question of manslaughter.

**9. Homicide ⊜⟹309(1)—Requested instructions defining manslaughter as killing without malice "or premeditation" held faulty.**

Requested instructions, in prosecution for murder defining manslaughter as killing of human being without malice "or premeditation," *held* faulty as to quoted expression, and properly refused.

**10. Homicide ⊜⟹190(7)—Testimony of uncommunicated threats by deceased against defendant, made hour before shooting, held admissible ∙to show quo animo and who was aggressor.**

In prosecution for murder, evidence ' of threats by deceased against defendant an hour before shooting, though uncommunicated to defendant, was relevant and competent as tending to show quo animo of attack by deceased and as to who was aggressor in difficulty, in view of conflicting evidence tending to show deceased was aggressor, and that defendant acted in self-defense.

**11. Homicide ⊜⟹190(7), 339—Conversation, including uncommunicated threat and opprobrious epithet held admissible to show deceased's state of mind before shooting, and exclusion of portion thereof was reversible error.**

Where uncommunicated threat made by deceased against defendant hour before shooting was part of brief conversation in which deceased stated reasons for animosity against defendant, all of which were related, entire conversation was admissible, and exclusion of portion of statement, including opprobrious epithet against defendant, was reversible error; such portion being competent to show deceased's state of mind at time.

**12. Criminal law ⊜⟹1169(3)—Error in admitting evidence of bullet found at car held not prejudicial to defendant admitting killing deceased.**

Where defendant admitted killing deceased, admission of evidence of bullet found at car

without connecting same with facts of case, though error, was not prejudicial.

**13. Homicide ⊜⟹276—Circumstances as to deceased's carrying pistol held for jury in determining disputed issue whether deceased was armed, and admission of evidence thereof was not error.**

Admission of evidence by witnesses who saw and were with deceased on day of homicide to the effect that he had no pistol, or that they did not see any pistol on his person, *held* not error, since such circumstances were for jury in determining disputed issue of ∙fact as to whether or not deceased was armed when shot by defendant.

Appeal from Circuit Court, Colbert County; Charles P. Almon, Judge.

Walter Roberson was convicted of murder in the first degree, and he appeals. Reversed and remanded.

These charges were refused to defendant:

"AA. Embraced or included in the indictment under which the defendant is being tried is manslaughter in the ∙first degree, which is the unlawful and intentional killing of a human being without malice or premeditation, and, if you believe from the evidence beyond a reasonable doubt that defendant is guilty of manslaughter in the first degree and if you convict him of this offense, the form of your verdict should be, We, the jury, find the defendant guilty of manslaughter in the first degree, and fix his punishment at imprisonment in the penitentiary for ——— years, fixing the number of years.

"BB. Embraced in the indictment under which defendant is being tried is manslaughter in ∙the first degree, which is the unlawful and intentional killing of a human being without malice or premeditation."

A. H. Carmichael, ∙of Tuscumbia, Stell & Quillin, of Russellville, and W. L. Almon, of Florence, for appellant.

The indictment averred that Tillman Powers Miller was killed, and the evidence showed that T. P. Miller was killed. The variance being fatal, defendant was entitled to the affirmative charge. Parks v. State, 21 Ala. App. 177, 106 So. 218; Ex parte Shoults, 208 Ala. 598, 94 So. 777; Wells v. State, 187 Ala. 1, 65 So. 950; Amer. Ry. Ex. Co. v. Powell, 206 Ala. 266, 89 So. 546. Charges AA and BB correctly stated the law, and their refusal constituted. reversible error. Dennis v. State, 112 Ala. 64, 20 So. 925. The finding of a bullet near the car was no part of the res gestæ, and was inadmissible. It was error to exclude the statement made by deceased to witness Looney. Mason v. State, 16 Ala. App. 501, 79 So. 199; Howard ∙v. State, 172 Ala. 402, 55 So. 255, 34 L. R. A. (N. S.) 990; Olive ∙v. State, 2 Ala. App. 77, 57 So. 66. Evidence of threats made by deceased should have been admitted. Olive v. State, supra.

---

⊜⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Charlie C. McCall, Atty. Gen., and Thos. E. Knight, Jr., Asst. Atty. Gen., for the State.

Failure to prove specifically that T. P. Miller and Tillman Powers Miller were one and the same person involved no substantive right of defendant. Charges AA and BB were abstract; the evidence showing clearly that defendant was guilty of some degree of murder. Gafford v. State, 125 Ala. 1, 28 So. 406; Whitehead v. State, 206 Ala. 288, 90 So. 351. There was no error in ruling as to the finding of a bullet at the car in which deceased was carried from the scene. Sup. Ct. Rule 45. The record shows that defendant received the benefit of evidence of threats alleged to have been made by deceased.

GARDNER, J. Appellant was indicted for the murder of Tillman Powers Miller, and, from his conviction of murder in the first degree, with punishment fixed at life imprisonment, he prosecutes this appeal.

The defendant rested his case upon his plea of self-defense. The deceased was mortally wounded by pistol shot fired by defendant one Sunday afternoon (June 12, 1927) at a public gathering, and died Tuesday thereafter. The evidence for the state tended to show that deceased was unarmed, made no hostile demonstration toward defendant, and that defendant, without any provocation, shot deceased twice, after warning the crowd to "look out." The evidence for the defendant, however, was to the contrary, and tended to show that defendant, upon seeing deceased near the refreshment stand, spoke to him as follows: "Mr. Miller, I would like to see you a minute if you are not busy," and suggested they sit down together, to all of which deceased replied, "What do you want with me. I have got no talk for you," then applied to defendant a vile epithet, throwing his right hand to his left breast under his coat, drawing a pistol, and firing at defendant, whereupon defendant immediately drew his pistol, which was in his right trouser pocket (defendant had on no coat), and fired two shots in rapid succession. Defendant insists that he had previously seen deceased on the grounds that day, and they had spoken to each other, and that he was not looking for him at the time he spoke to deceased at the refreshment stand, but looking for some one else; that, seeing him close by, he merely thought he would have a talk with him; that his pistol had been in his car, where he frequently left it for some time, but that he took it out to keep some one from stealing it, and not on account of deceased, whom he did not know was present at that particular time. Other details of the tragedy need not be here stated.

[1-3] In the oral charge, the trial court gave no instructions to the jury on manslaughter in the first degree, though his attention was directed thereto by charges AA and BB

refused to defendant. The court evidently entertained the view there was no tendency of the evidence to warrant a conviction of manslaughter in the first degree. We are persuaded this was an erroneous view. Whether or not the homicide is the offspring of malice is the characteristic which distinguishes murder and manslaughter. "Mere words, no matter how insulting, never reduce a homicide to manslaughter. Manslaughter is the unlawful killing of a human being without malice; that is, as the unpremeditated result of passion-heated blood—caused by a sudden, sufficient provocation. And such provocation can, in no case, be less than an assault, either actually committed or menaced under such pending circumstances as reasonably to convince the mind that the accused had cause for believing, and did believe, he would be presently assaulted, and that he struck, not in consequence of a previously formed design, general or special, but in consequence of the passion suddenly aroused by the blow given or apparently about to be given." Mitchell v. State, 60 Ala. 26; Reeves v. State, 186 Ala. 14, 65 So. 160; Davis v. State, 214 Ala. 273, 107 So. 737; Vaughn v. State, 201 Ala. 472, 78 So. 378; Peagler v. State, 207 Ala. 586, 93 So. 536.

In Reeves v. State, supra, it was distinctly pointed out that a defendant who claims to have acted in self-defense is not thereby precluded from asserting that the homicide was committed under circumstances reducing it to manslaughter, where the evidence before the jury would so authorize.

[4, 5] In the instant case, there was evidence before the jury tending to show that, upon defendant addressing deceased in a manner not calculated or intended to provoke any difficulty, deceased angrily cursed defendant, immediately drawing a pistol from his left side, firing it at defendant, and that this was the first shot fired. Clearly, if this version of the difficulty was accepted by the jury, they would be authorized to convict of manslaughter in the first degree under the authorities above cited. In the instant case there is evidence tending to show previously existing bad feeling between the parties, and threats made by deceased against defendant, which, when considered with all the other evidence in the case, might authorize the jury in finding that the provocation sufficient to reduce the offense to manslaughter was sought by defendant to the end that he might have opportunity to execute his malice. In such event, the provocation would not suffice, for as said by this court in Stewart v. State, 78 Ala. 436:

"A provocation will avail nothing, * * * if it is sought for and induced by the act of the defendant, in order to afford him an opportunity to execute his malice. In such a case, he acts from malice, whatever may be the extent of his passion at the moment of the killing."

But as said by the court in that case, and as applicable here:

"Whether the defendant acted from the one or the other of these motive powers—from the sudden heat of passion, or from malice or formed design—is a question purely of fact for the jury."

[6, 7] We are not here concerned as to evidence offered, whether true or false, nor with the weight to be given thereto. These are matters exclusively within the province of the jury. "The province of the court and jury are distinctly marked, and neither can lawfully invade the other." The following excerpt from Dennis v. State, 112 Ala. 64, 20 So. 925, we think appropriate here:

"Because of the difficulty which sometimes arises to distinguish between the most aggravated cases of manslaughter in the first degree, and the mildest type of murder in the second degree, it has been declared 'that it is much the safer rule to charge upon all the degrees of the homicide included in the indictment when the party is on trial for murder, unless it is perfectly clear to the judicial mind, that there is no evidence tending to bring the offense within some particular degree.'"

[8, 9] From a consideration of the tendencies of all the evidence in the case, we entertain the opinion a jury question was presented as to defendant's guilt of manslaughter in the first degree. The right of defendant to have the jury so instructed affected most seriously his substantial rights. A reversal of the cause cannot, however, be rested upon this ground, as we find, upon closer inspection, the charges AA and BB refused to defendant are faulty, and the court cannot be placed in error in their refusal. The absence of malice distinguishes manslaughter in the first degree from murder. "A killing in sudden passion excited by sufficient provocation, without malice, is manslaughter." Vaughan v. State, 201 Ala. 472, 78 So. 378. Each of these charges used the expression "without malice or premeditation," and it is the use of the two latter words "or premeditation" that renders these charges manifestly faulty.

We have considered the question at some length, however, in view of its importance upon another trial of the cause following a reversal upon the ground presently to be stated.

[10, 11] Defendant offered the testimony of one George Looney as to threats made by deceased against defendant while on the grounds on the day of the killing, and about an hour before the shooting. Though uncommunicated to defendant, yet, in view of evidence already offered by defendant tending to show deceased was the aggressor, and that he (defendant) acted in self-defense, all of which was in sharp conflict with testimony offered by the state, the evidence of said Looney was relevant and competent, as tending to show the quo animo of the alleged demonstration or attack by deceased as well also as to who was the aggressor in the difficulty. Roberts v. State, 68 Ala. 156; Howard v. State, 172 Ala. 402, 55 So. 255, 34 L. R. A. (N. S.) 990. The threat as testified to by said Looney was a part of a brief conversation in which deceased stated some reasons for his animosity, or the grievances he had against defendant, all of which were so related and connected as to constitute the whole admissible as a part of this conversation in connection with the threat. Looney testified that deceased, looking at defendant, pointed towards him, saying, "I see the d—— s—— of a b—— standing over there now." We quote the witness, but leave opprobrious words unwritten. The solicitor moved to exclude some specific statements as well as the entire statement, whereupon the court excluded the portion of the statement above quoted, including the opprobrious epithet.

One of the underlying purposes of the admission of such uncommunicated threat is that it may tend to show the quo animo of the alleged attack, and clearly, if in making the threat such quoted language is used, this language should likewise go to the jury for their consideration, and as throwing light on the state of mind of deceased at the time. The court erred in so excluding the statement. The evidence was in sharp conflict. Deceased, it seems, had formerly been sheriff of the county. The language used was competent, and tended to add much weight to the threat in connection with which it was used. In view of the entire record, which has been carefully considered in consultation, the court has reached the conclusion that this ruling probably injuriously affected defendant's substantial rights, and suffices to work a reversal of the cause.

[12, 13] There seems to have been no effort made to connect a bullet found at the car with the facts of this case, and, standing alone as it does, we are of the opinion this evidence was inadmissible. But, as defendant admitted killing deceased, we find nothing prejudicial to defendant in this action of the court. Error cannot be rested upon the action of the court in admitting evidence by the various witnesses, who saw and were with deceased on the day of the homicide, to the effect that he had no pistol, or that they did not see any pistol on his person. These were circumstances to be considered by the jury in determining a disputed issue of fact as to whether or not deceased was armed when shot by defendant.

Appellant lays much stress upon an alleged variance in the name of deceased as stated in the indictment and shown in the proof, citing, among other authorities, Ex parte Shoults, 208 Ala. 598, 94 So. 777, and Parks v. State, 21 Ala. App. 177, 106 So. 218. We gather from the record that the question here insisted upon arises merely from a failure by the

state to show, due to a mere oversight, that the initials referred to by the witnesses in speaking of deceased were the initials of his given name as stated in the indictment. This is a matter which, of course, we may presume will not arise on another trial, and the question needs no consideration or discussion at this time.

For the error indicated, let the judgment be reversed, and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and SAYRE and BOULDIN, JJ., concur.