TYSON, Judge.
Alan Lenair Albert was indicted for murder in violation of § 13A-6-2, Code of Alabama 1975. The jury found the appellant “guilty as charged in the indictment.” He was sentenced to 25 years’ imprisonment in the penitentiary.
Booker Brown testified that he was a bus driver for the Birmingham Transit Authority on December 7, 1983. At approximately 4:00 p.m. on that day, the appellant Albert, Elijah George, Marilyn White and Michael Anthony Jones boarded Brown’s bus and sat toward the back door of this bus. A few minutes later the victim, James Simmons, and Anthony Anderson also boarded the bus. The two sat in the back of the bus.
At some point, Brown heard a shot. He turned around and saw the victim run toward the front of the bus. More shots were fired and the victim, James Simmons, fell down beside Brown. Then the appellant walked to the front of the bus and repeatedly shot the victim until his gun was empty. Brown said both the appellant and George fired shots at the victim but he did not know which one shot first.
As the appellant was getting off the bus, he told Brown, “[Tjhis man had shot me the other night, and I’m getting him back.” (R. 28). After the appellant and his friends got off the bus, George got back on the bus to get his radio. Brown then called his boss who contacted the police. Brown stated he never saw a weapon on the victim.
Anthony Anderson testified that he got on the bus with the victim, Simmons, that afternoon and they sat in the back. Two men sitting toward the front kept looking back at them. Then George got up, pulled a gun and told some other people on the bus to move to the front. George instructed Anderson not to move. He then asked the victim, “Ain’t you the guy that shot me?” (R. 146).
The victim then ran toward the front of the bus, and George began shooting. The victim fell to the floor and George continued shooting. At this point, the appellant shot the victim. George and the appellant, Albert, then got off the bus. The appellant got back on the bus, got a radio and then tried to shoot the victim again but his gun was empty.
Detective William Gaut of the Birmingham Police Department arrived at the scene at 4:30 p.m. The victim was lying in the front portion of the bus. He was pronounced dead at the scene. The victim, Simmons, had an unloaded .22 pistol inside a zippered cloth bag inside his jacket pocket.
On December 8, 1983, the appellant Albert, George, White and Jones were arrested at the Granada Hotel. Jones and White were released. In the room where the appellant was arrested a .38 revolver was *36 found in a window sill. A .32 caliber pistol was found on the bed in the room where George was arrested. Both pistols were loaded.
The appellant made a statement to Gaut the night he was arrested. He stated that the victim had shot him and George two days before the incident on the bus. When the victim got on the bus, he sat in the back. The victim, Simmons, stuck his hand in his pocket, and the appellant told some people to move to the front because there might be some shooting.
The victim got up and started toward the appellant, Albert. He had his hand in his pocket. The appellant then “emptied a .38 five times into him and then I emptied that one .32 into him.” (R. 118). The appellant stated that he had both guns on his person and George did not do any of the shooting.
When the appellant got off the bus, he told the driver, Brown, that the victim had shot him. After he got off the bus, he got back on to get some packages.
The appellant stated that the gun found in his room at the Granada Hotel was the one he used to shoot the victim. He said that his statement was “the God hearing truth.” (R. 123).
Dr. Robert Brissie performed the autopsy on the victim, Simmons. His examination found that the victim suffered five gunshot wounds. He numbered each of the wounds to aid his testimony.
Number one. The gunshot penetrated the left wrist area then passed upwards to the chest and punctured the left lung. This wound was a distant wound and would have been rapidly fatal.
Number two. Gunshot went through the left arm to the chest and punctured both lungs, the diaphragm, stomach, liver and aorta. This contact wound would be fatal.
Number three. Gunshot went into the back of the shoulder and exited the front part of the shoulder. This gunshot was fired near the body but would not have been fatal.
Number four. Gunshot fired into back and punctured right lung and aorta. This was a distant wound which would have been fatal.
Number five. Gunshot fired into back and hit the spinal cord. This distant wound would have caused immediate paralysis.
The bullets recovered from the body along with a spent projectile found at the scene were submitted, along with the .32 and .38 pistols, to Lauden Yates, a criminalist with the Department of Forensic Sciences. The spent projectiles from gunshot numbers one, two, three and five from the body of the victim and the scene of the crime were .38 projectiles and were fired through the gun found in the appellant’s room. The spent projectile number four was a .32 projectile and was fired from the gun found in George’s room.
Susie Albert, the appellant’s grandmother, testified that the appellant, George, Jones and White were at her house until 3:45 on the day of the shooting. White testified that, after leaving the appellant’s grandmother’s house, the four of them got on the bus. She and the appellant sat in one seat and George and Jones sat behind them. When the victim, Simmons, got on the bus, he unzipped his jacket and stuck his hand inside his jacket.
George then told two people to move to the front. He went back to where the victim was and asked, “You remember when you shot me Monday night.” (R. 163). The victim said he didn’t know what George was talking about. George then shot the victim, and the victim got up and ran to the front of the bus and fell on top of Jones. George then shot the victim some more. George had a .38 pistol.
At this point, the appellant was standing with his .32 pistol. George grabbed it and shot the victim again.
The four then got off the bus arid ran to a condemned house. They later obtained a ride from the appellant’s father to the Granada Hotel.
Jones testified as to essentially the same facts as did White.
*37 The appellant, Albert, testified that the victim shot him and George two days before the shooting in question. A man named Marvin Wesley told the appellant that the victim did not mean to shoot him but had intended to shoot George. The victim told Wesley he was going to have to kill the appellant. The appellant was told that the victim had killed someone before.
The appellant stated that he didn’t know the victim, Simmons, was going to get on the bus that afternoon. After the victim sat down in the back, George got up and told some people to move because there might be trouble. George then started shooting the victim. The victim got up and ran toward the appellant with his hand in his pocket. The appellant shot the victim as he reached for a weapon.
After the victim fell, George shot him some more. The appellant then got off the bus and didn’t get back on.
The appellant testified that he gave the statement to Gaut because he thought White was pregnant and he wanted to protect her.
I
The appellant contends the trial judge erred to reversal by failing to charge the jury on the lesser included offense of manslaughter. We must agree.
Recently, this court in Hill v. State, 485 So.2d 808 (Ala.Crim.App.1985) held that a defendant is entitled to a charge on manslaughter when evidence of an imperfect claim of self-defense is presented. In Hill, supra, this court stated, quoting from Wyllie v. State, 445 So.2d 958 (Ala.Crim.App.1983), cert. denied, 445 So.2d 958 (Ala.1984):
“ ‘Appellant’s testimony was presented in support of [his] claim of self-defense to prove that [he] was, indeed, justified in killing [his wife]. Implicit in appellant’s version of the facts was the theory that [he] was provoked by [his wife’s] attack upon [him]. If believed, appellant’s version of the facts might have provided a “rational basis” for a conviction of manslaughter pursuant to § 13A-6-3(a)(2), Code of Alabama 1975. But see, Pennell v. State [429 So.2d 679 (Ala.Cr.App.1983) ], supra (evidence did not justify a manslaughter instruction). However incredible appellant’s version of the facts might have been, in light of the state’s convincing evidence to the contrary, there was evidence of sufficient provocation to reduce the offense from murder to manslaughter. See Reeves v. State, 186 Ala. 14, 65 So. 160 (1914) Roberson v. State, 217 Ala. 696, 117 So. 412 (1928). Under these circumstances the jury would have been authorized to find the appellant guilty of only manslaughter, as the result of an imperfect claim of self-defense.
“ ‘Although the labels have now changed with the restructuring of homicide offenses in Alabama’s new Criminal Code, the analyses applied in Reeves and Roberson still apply. The factual circumstances of Roberson, wherein the defendant claimed self-defense and provocation for shooting his victim, are very similar to those of the instant case. The Roberson court emphasized that “a defendant who claims self-defense is not thereby precluded from asserting that the homicide was committed under circumstances reducing it to manslaughter, where the evidence before the jury would so authorize.” The weight and credibility of appellant’s evidence was a matter exclusively within the province of the jury and a proper manslaughter charge was warranted. Dennis v. State, 112 Ala. 64, 20 So. 925 (1896); Roberson v. State, supra. Although the new code restructuring of homicide offenses has helped somewhat, the difficulty of distinguishing between murder and manslaughter in any given case still exists. Therefore, it is still much the safer rule to charge upon all the degrees of homicide included in the indictment when a party is on trial for murder. Dennis v. State, supra. Reeves v. State, supra; Roberson v. State, supra; Phelps v. State, [435 So.2d 158 (Ala.Cr.App.1983) ], supra, and cases therein cited.
Wyllie, supra at 963.’ ”
As the appellant submits in his brief, the facts of Wyllie, supra, are analogous to the *38 facts at bar. In Wyllie, supra, the defendant shot her husband as he was coming toward her with his hand in his pocket. Although the defendant did not see a knife nor was one found, she knew he always carried a knife. The defendant’s husband had made threats on the defendant’s life previously.
In the case at bar the appellant testified that he had been shot by the victim, Simmons, two days prior to the shooting on the bus. He had heard that the victim was going to kill him and that he had killed before.
When the victim came toward him with his hand in his pocket, the appellant shot him because he thought the victim was reaching for a weapon. The facts, if believed, would have been provocation sufficient to justify a conviction of manslaughter. Thus, the appellant’s testimony would provide a reasonable theory to support a charge on the offense of manslaughter.
The failure of the trial judge to charge on the lesser included offense of manslaughter constitutes reversible error. Thus, we must reverse and remand this cause to the trial court for a new trial.
It is unnecessary for us to discuss the other two issues raised by the appellant due to our decision above.
For the reasons shown, this cause is reversed and remanded.
REVERSED AND REMANDED.
TAYLOR, PATTERSON and MCMILLAN, JJ., concur.
BOWEN, P.J., concurs specially with opinion.